Scott Pactor SBN#216629
LAW OFFICES OF SCOTT PACTOR
9150 Wilshire Blvd #175
Beverly Hills, CA. 90212
Phone: (619) 260-2636
Fax: (619) 260-0058

Attorney for Sylvester Robinson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

_____  )

United States of America,                  )

             Plaintiff,           )

        vs.                                    )

Sylvester Robinson                       )

            Defendant.          )
_____

)
)
)
)
)
)
)
)
)
)
)

Case No.: 25cr211-FLA

**MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT MISCONDUCT: COUNT 1(RICO CONSPIRACY), 2 & 3(ROBBERY), 4-17 (EXTORTION)**
Date: March, 13th
Time: 1: 30 PM

**TO:  Bill Essayli, United States Attorney for the Central District of California and Jena Malone and Kevin Butler, Assistant United States Attorney's**

     Please be advised that Mr. Robinson, by and through counsel will ask the court to issue an order granting the motion listed below.

## **Motion**

The accused, Sylvester Robinson, by and through his attorney, Scott Pactor, hereby files the attached motions based on the attached memorandum of points and authorities. They are as follows:

1.     Motion to Dismiss Counts 1-17 for Outrageous Government Misconduct

Mr. Robinson's motion is based upon the attached memorandum of points and authorities.

Dated this 6th day of February

/s Scott Pactor

Scott Pactor
Attorney for
Sylvester Robinson

//

//

//

//

//

//

//

//

//

//

//

Scott Pactor SBN#216629
LAW OFFICES OF SCOTT PACTOR
934 23rd st
San Diego, CA. 92102
Phone: (619) 260-2636
Fax: (619) 260-0058

Attorney for Sylvester Robinson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Sylvester Robinson<br><br>　　　　　Defendant. | Case No.: 25cr211-FLA<br><br>**Memorandum of Points and Authorities in Support of Motion to Dismiss for Outrageous Government Misconduct** |

The government sanctioned activity by CW1 in this case constitutes outrageous government misconduct and as a result the Government has violated the Due Process clause of the Fifth Amendment, and Counts 1-17 should be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.

<u>The Standard for a Claim of Outrageous Government Misconduct</u>

Outrageous government misconduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed. *United States vs. Williams*, 547 F. 3d 1187, 1199 (9th Cir. 2008). In this case, the Government has concocted, directed and supervised the criminal enterprise from start to finish, and thus placed itself squarely within the prohibition of outrageous government misconduct imposed by the Due Process Clause of the Fifth Amendment. *See United States vs. Russell*, 411 U.S. 423, 431-432 (1973). Specifically, the so-called "criminal enterprise" at the heart of this RICO enterprise was fabricated by a single co-operator at the behest of the government.

He was able to fabricate and describe the non-existent enterprise that is the subject of this indictment because at the time he came forward with his initial claims against the defendants, he had already been cooperating with authorities for a year. During that time he learned what he was expected to deliver.

As described by the 9th Circuit, the standard for supporting a claim of outrageous government conduct is a high one requiring a showing that "the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *See Williams* at 1199, *citing United States vs. Gurolla*, 333 F. 3d 944, 950 (9th Cir. 2003)  In *Gurolla*, the Court explained,

"this standard is met when the government engineers and directs a criminal enterprise

from start to finish but is not met when the Government merely infiltrates an existing

organization, approaches people it believes to be already engaged in or planning to

participate in the conspiracy or provides necessary and/or valuable items to the venture."

*See Gurolla* at 950.

In *Williams,* the Court pointed to a five-factor test, the satisfaction of which meant

that the Government activity in a specific case was acceptable:

the defendant was already involved in a continuing series of similar crimes, or the

charged criminal enterprise was already in process at the time the government agent

became involved; (2) the agent's participation was not necessary to enable the defendants

to continue the criminal activity; (3) the agent used artifice and stratagem to ferret out

criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent

approached persons already contemplating or engaged in criminal activity.

*See Williams* at 1199-1200, *citing United States v. Bonanno*, 852 F. 2d 434, 437-38

(9th Cir. 1988).

In *Williams*, the Court did not find the conduct outrageous because the targeted

defendant was already engaged in several drug transactions, revealed his prior

participation in a bank robbery and told the informant that he was planning another bank

robbery before the idea of the stash house robbery was introduced. *Id.* According to the

Court, "As this evidence shows, Williams was involved in both robberies and drug

transactions before Tony suggested the stash house robbery." *Id.*  The Court in *Williams* relied on the fact that the lead defendant was already planning to commit a similar crime. *Id.*

Here, the criminal activity by CW1 at the direction of the Government does shock the conscience, and CW1's description and creation of the enterprise in question fails to satisfy any of the factors of the *Bonnano* test.

## II.

### CW1 Created the Enterprise Charged in this Case

The defendants in this case are challenging the existence of the enterprise itself, which the Government vaguely describes as the "Big U Enterprise."  The problems with the non-existence of this alleged enterprise are visible in the press release the United States Attorney's Office released on the day of the take-down, where Henley is identified as a "Long-time Neighborhood Crips Leader" twice and the "Big U Enterprise" is only mentioned once.

As described at length in Henley's wiretap motion, CW1, through his continuing criminal activity, created the enterprise by drawing Henley, Robinson and others into HIS already existing criminal activity.  Before any cooperation with the Government began, CW1 was discovered to the SOS (source of supply) of a car filled with methamphetamine, marijuana, and cocaine – seized during a vehicle stop in the Midwest

in the summer of 2020.  This led to a search of his home and office, where the

Government discovered a safe with money and bags of cocaine, as well as what appeared

to a fully-functioning illicit marijuana store.

He himself created the description of the roles various individuals played within

the conspiracy, specifically the allegation that Robinson was somehow Henley's "Right

Hand Man" and Martin was Henley's "enforcer."  To date, CW1 is the only individual

besides the Government itself to describe these people in those terms.

III.

CW1's Activity Satisfies None of the Five Factors the Ninth Circuit Uses to Evaluate the
Outrageousness of Government Agent Activity

The criminal activity the government relied upon to initiate the charges in this case

was the already existing criminal activity of CW1. Specifically, CW1's role as a drug

trafficker of marijuana, his role as a promoter of nightlife events and his role as a sex

trafficker. There is zero evidence that Robinson was involved in any of this activity

before CW1 showed up on the scene.  Evaluating the activity of the government agent in

this case using the factors in *Bonnano* and approved by the Court in *Williams,* must result

in the case being dismissed for outrageous government misconduct.

A. <u>Robinson Was Not Involved in a "Continuing Series of Similar Crimes" and the "Charged Criminal Enterprise" Did Not Exist Before CW1 Got Involved</u>

As the Court and Government are aware, CW1 was an international drug trafficker BEFORE he began working as an agent for the Government of the United States. Specifically, prior to his involvement in this case, CW1 was already facing serious federal criminal charges for the trafficking not just of marijuana, but of methamphetamine and cocaine.  The Government understood after his arrest on charges laid in the Midwest, he continued to operate as a marijuana trafficker with the express consent of the United States Government to do so.

On the other hand, Robinson does not have aany history in the drug trade.  Robinson, the main point of contact for CW1 in the early stages of his work on behalf of the Government, has a well-documented career as a track and field and football coach, and no history of drug use let alone drug sales or trafficking.  He is not a member of the Rolling 60's Crips nor any other criminal street gang.

Similarly, the charged criminal enterprise in this indictment simply did not exist before CW1 invented it.  Before CW1 fabricated an enterprise out of thin air, there were simply the various interests of a single man, Eugene Henley and his non-connected non-enterprise related relationships with others.  This is visible in the material the government itself has highlighted in the form of videos taken for a documentary about Henley.  In those interviews, there is no discussion of a Big U Enterprise, just talk about Big U

himself.  To the extent that an enterprise is referenced, it is the Rolling 60's Crips, but the Government concedes that the criminal activity here did nothing to benefit the Rolling 60's Crips.

### B. CW1's Participation Was Integral and Necessary to the Alleged Criminal Activity in This Case

As the facts demonstrate, CW1 sought to intertwine Robinson in his pre-existing criminal activity, specifically marijuana trafficking.  CW1 engaged in non-criminal monetary activity with both Henley and Robinson, living in a rental provided Henley and paying rent, and borrowing money from Robinson (among other).  He then turned around and portrayed these straight-forward economic transactions as "extortion." Similarly, CW1 had legitimate fears for his own safety that had nothing to do with Big U or anyone else in this case but rather stemmed from his lengthy history of stiffing providers of marijuana.

### C. CW1 Used Artifice and Stratagem to Create, Not "Ferret Out" Criminal Activity

The use of artifice and stratagem by CW here was not designed to "ferret out" secret criminal activity, rather to create criminal activity as well as an enterprise to prosecute. The course of conduct by CW1 saw him draw Henley and Robinson into his already existing criminal activity, including staging events (Henley's birthday party) and seeking protection from his very real enemies who were upset because he failed to pay them in a

timely fashion for the drugs he sold with the permission of the Federal Government. CW1 fabricated a narrative of extortionate payments, while he carefully distinguished those supposed payments from more prosaic non-allegedly extortionate expenses like the rent, he owed Henley for living in a Henley owned building, or the money he borrowed from Robinson.

D.  <u>CW1 Did Not Infiltrate an Existing Criminal Enterprise, He Created One Out of Whole Cloth</u>

The Government's own charging documents and publicity material demonstrate the non-existence of the Enterprise charged in this case by referring to other, existing entities like U-niq music, Developing Options Inc. or the Neighborhood Rolling 60's Crips. Rather, they created a new enterprise to match the criminal activity of CW1 himself.  The indictment reflects the fact that two of the most serious crimes in the indictment, specifically robbery and extortion, had nothing to do with anyone or anything expect CW1 and his own business ventures.

E.  <u>Robinson was Not Engaged in or Contemplating Criminal Activity Prior to His Dealings With CW1</u>

The Government has brought forward no witnesses and information that Robinson was involved in extortion or robbery before he encountered CW1.  Both the robbery and the pattern of extortionate activity alleged in the indictment have everything to do with

CW1 and his already existing business enterprise and do not prove a brand-new enterprise as alleged in the indictment.

## IV.

## <u>Conclusion</u>

The behavior of CW1 in this case was outrageous, as is the fact that the Government allowed him not only to continue committing serious crimes while he was co-operating, but also to invent crimes related to his business transactions with people not mentioned or charged in the indictment.  Mr. Robinson was not involved in these activities before CW1 showed up on the scene and CW1 very much was.  Accordingly, Counts 1 through 17 must be dismissed.

Respectfully Submitted,

/s Scott Pactor

Dated:  February 6th, 2026

Scott Pactor
*Attorney for*
*Sylvester Robinson*