**F I L E D**
CLERK, U.S. DISTRICT COURT

2/19/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>EUGENE HENLEY, JR.,<br>　aka "Big U,"<br>　aka "Unc,"<br>　aka "Draws,"<br>　aka "Hannibal,"<br>　aka "Hannibal Muhammad,"<br>　aka "Anybody Killa,"<br>　aka "Dave Austin,"<br>SYLVESTER ROBINSON,<br>　aka "Vey,"<br>MARK MARTIN,<br>　aka "Bear Claw,"<br>TERMAINE ASHLEY WILLIAMS,<br>　aka "Luce Cannon,"<br>ARMANI AFLLEJE,<br>　aka "Mani,"<br>FREDRICK BLANTON, JR., and<br>TIFFANY SHANRIKA HINES,<br><br>　　　　　Defendants. | 2:25-CR-211(A)-FLA<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. § 1951(a): Conspiracy to Interfere with Commerce by Robbery and Extortion, Interference with Commerce by Robbery and Extortion, and Attempted Interference with Commerce by Extortion; 18 U.S.C. § 2421(a): Transportation of an Individual in Interstate Commerce with Intent that the Individual Engage in Prostitution; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 666(a)(1)(A): Embezzlement, Conversion, and Intentional Misapplication of Funds from Organization Receiving Federal Funds; 18 U.S.C. § 1344(1): Bank Fraud; 26 U.S.C. § 7201: Attempt to Evade and Defeat the Assessment and Payment of Income Tax; 26 U.S.C. § 7203: Willful Failure to File a Tax Return; 18 U.S.C. §§ 924, 981(a)(1)(C), 982, and 1963, 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

1    The Grand Jury charges:

2                              COUNT ONE

3                       [18 U.S.C. § 1962(d)]

4               [DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

5    At times relevant to this First Superseding Indictment:

6    A.    INTRODUCTORY ALLEGATIONS

7         1.    Defendant EUGENE HENLEY, JR., also known as ("aka") "Big

8    U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad,"

9    aka "Anybody Killa," aka "Dave Austin," was a self-admitted member

10   and "original gangster" or "OG" of the Rollin' 60s Neighborhood Crips

11   (the "Rollin' 60s"), a violent street gang founded and operating in

12   Los Angeles, California.

13        2.    Defendant SYLVESTER ROBINSON, aka "Vey," was a criminal

14   partner of defendant HENLEY.  Defendant ROBINSON was a years-long

15   associate and confidant of defendant HENLEY and served as his

16   righthand man, underboss, and enforcer.

17        3.    Defendant MARK MARTIN, aka "Bear Claw," was a criminal

18   partner of defendant HENLEY and also a self-admitted member of the

19   Rollin' 60s.  Defendant MARTIN was a close confidant and trusted

20   lieutenant of defendant HENLEY.  Defendant MARTIN also owned and

21   operated "Under the Hood Muscle Cars," located at 1613 West 134th

22   Street, Gardena, California.

23        4.    Defendants HENLEY and MARTIN co-founded Uneek Music

24   Entertainment, Inc. ("Uneek Music"), an independent record label.

25   Defendant HENLEY was the Chief Executive Officer and defendant MARTIN

26   was the Chief Financial Officer of the Ex-Offender Fellowship

27   Network, a purported California-registered charitable organization

28   under 26 U.S.C. § 501(c)(3), which did business as "Developing

                                    2

Options," and was also sometimes referred to as "Uneek Ballers," "Crenshaw Rams Football," "Crenshaw Youth Football and Cheer," and "Crenshaw Ballers" (hereinafter referred to as "Developing Options"). Defendant ROBINSON was on the Developing Options employee payroll. Defendant HENLEY also was the sole proprietor and owner of a related company, "Celebrity Socks," which did business as "Uneek Socks."

5.    Developing Options' purported objective was to be a service and charitable organization providing alternative choices to gang violence, narcotics offenses, and other criminal activity for South Los Angeles youth.  Developing Options, as depicted in the below image, claimed to devote resources to inner-city athletic organizations, such as the Crenshaw Rams.



6.    The City of Los Angeles, a unit of local government in Los Angeles County, within the Central District of California, awarded Developing Options an annual $550,000 grant, which was federally funded, as part of the City of Los Angeles Gang Reduction Youth Development ("GRYD") program.  From on or about July 1, 2018, to on or about June 30, 2023, Developing Options was allotted $2,352,000

from the Mayor's Office of the City of Los Angeles.  Defendant HENLEY's duties and responsibilities as the Chief Executive Officer of Developing Options included ensuring that Developing Options remained in compliance with its contract with the City of Los Angeles and the Mayor's Office, which included providing a budget, hiring and compensation of employees, complying with general reporting requirements of the contract, and otherwise serving as the leader of Developing Options.  Defendant HENLEY's responsibilities also included ensuring Developing Options' compliance with the mandatory GRYD handbook, as set forth in its contract.  Those requirements included, but were not limited to, submitting all employees for background checks in order to work under the GRYD contract, certifying Developing Options' employee training with the Los Angeles Violence Intervention Training Academy and Member Action Resources Center, and general compliance with the requirements outlined in the GRYD handbook.  As Chief Financial Officer, defendant MARTIN shared with defendant HENLEY the responsibility of ensuring Developing Options' compliance with the GRYD handbook.

B.    THE RACKETEERING ENTERPRISE

7.    Defendants HENLEY, ROBINSON, and MARTIN, and others known and unknown to the Grand Jury, were members and associates of a criminal organization that engaged in, among other things, acts of violence, fraud, and other crimes, including murder, robbery, extortion, human trafficking, and embezzlement.  This organization, referred to hereinafter as the "Big U Enterprise," operated within the Central District of California and elsewhere.

8.    The Big U Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18,

4

United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.  The Big U Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for the common purpose of achieving the objectives of the Big U Enterprise.

C.    PURPOSES OF THE ENTERPRISE

9.    The purposes of the Big U Enterprise included, but were not limited to, the following:

a.    Enriching Big U Enterprise members and associates by using the power and status of the Big U Enterprise and defendant HENLEY and his reputation as an "original gangster" of the Rollin' 60s to commit extortion, robbery, fraud, and other crimes;

b.    Promoting, protecting, and expanding the power, reputation, and profits of the Big U Enterprise and its members and associates through the use of intimidation, fear, violence, threats of violence, assaults, extortion, and murder;

c.    Using social media platforms, documentaries, podcasts, interviews, and defendant HENLEY's reputation and status to create fame for, and stoke fear of, the Big U Enterprise and its members and associates;

d.    Financially enriching Big U Enterprise members and associates by defrauding donors to nonprofit entities under the control of the Big U Enterprise and its members and associates, including Developing Options;

e.    Financially enriching Big U Enterprise members and associates by defrauding federal, state, and local agencies that awarded grants and other financial support to nonprofit entities

5

1  under the control of the Big U Enterprise and its members and

2  associates, including Developing Options;

3       f.   Financially enriching Big U Enterprise members and

4  associates by defrauding federal agencies and mortgage lending

5  businesses to make loans to employees of entities under the control

6  of the Big U Enterprise and its members and associates, including

7  Uneek Music and Developing Options;

8       g.   Gratifying Big U Enterprise members and associates by

9  trafficking and exploiting sex workers; and

10       h.   Concealing and protecting the illegal activities of

11  the Big U Enterprise and its members and associates from detection by

12  law enforcement through means that included, among other things,

13  witness tampering and obstruction of justice.

14  D.   <u>MEANS AND METHODS OF THE ENTERPRISE</u>

15     10.   The means and methods by which members and associates of

16  the Big U Enterprise conducted and participated in the conduct of the

17  affairs of the Big U Enterprise included, but were not limited to,

18  the following:

19       a.   Members and associates of the Big U Enterprise

20  committed, and conspired, attempted, and threatened to commit, acts

21  of violence, including murder, armed assaults, robberies, extortions,

22  acts of intimidation, and threats of violence in order to generate

23  income, create an atmosphere of fear, protect and expand the Big U

24  Enterprise's reputation for violence, and expand the Big U

25  Enterprise's criminal operations.

26       b.   Members and associates of the Big U Enterprise would

27  use defendant HENLEY's history and reputation, including his

28  connections to the violent Rollin' 60s street gang, to tout the Big U

1  Enterprise's reputation for violence and that the Big U Enterprise

2  "controlled" Los Angeles.

3          c.    As part of the Big U Enterprise's purported "control"

4  of Los Angeles, individuals including professional athletes,

5  musicians, and others, intending to conduct certain types of business

6  in Los Angeles, including both legitimate business and illicit

7  criminal conduct, were required to "check in" with defendant HENLEY

8  prior to traveling to Los Angeles or engaging in certain activities

9  in order to obtain "protection" from the Big U Enterprise while in

10 Los Angeles.  Defendant HENLEY hosted a podcast titled "Checc'n In,"

11 the opening theme song of which explained, "When you hop off the

12 plane, check in.  Penthouse suite, check in.  When your feet hit the

13 street, check in.  'Cause if not, shit get hot.  You better check

14 in."  The "check in" included both a payment to the Big U Enterprise

15 as well as requesting permission from defendant HENLEY to conduct

16 certain activities, including acts of violence, that were sanctioned

17 by the Big U Enterprise.  As defendant HENLEY described in a

18 documentary film that he produced about his life titled "Hip Hop

19 Uncovered," "if I don't pick up the phone, that can mean death for

20 somebody."  On the "Nothin 2 Somethin" podcast, defendant HENLEY

21 said, "You gonna check in . . . .  You could choose not to, and it's

22 gonna be a problem . . . .  If you choose not to check in, you suffer

23 the consequences; you feel like you got something bigger than what's

24 there" and that not checking in is basically "an act of war . . . .

25 It ain't not one human being who not gonna check in."  In a video

26 defendant HENLEY recorded of a film crew in Los Angeles's Hyde Park

27 neighborhood in or around 2017, as depicted in the below image,

28 defendant HENLEY claimed, "Anytime you want to do movies in the hood,

7

1  just check it in . . . , but if you don't check it in, we going to

2  check you in alright . . . .  We going to check in all your

3  equipment."

4       d.    While members and associates of the Big U Enterprise

5  used defendant HENLEY's and the Big U Enterprise's history and

6  reputation in order to "control" Los Angeles through violence, fear,

7  and intimidation, defendant HENLEY simultaneously attempted to create

8  an air of legitimacy for himself publicly by promoting himself as a

9  reformed gang member focused on bettering his community through

10  purported nonprofit organizations he founded, such as Developing

11  Options, and by soliciting donations from celebrities and grants from

12  governments and foundations to these charitable organizations.  In

13  actuality, defendant HENLEY and other members and associates of the

14  Big U Enterprise used these purported nonprofit entities to enrich

15  and further the objectives of the Big U Enterprise, including by:

16       i.    Embezzling funds meant as charitable donations to

17  the nonprofit entities;

18       ii.   Using the nonprofit entities to fraudulently

19  apply for government assistance and loans; and



8

iii. Using the nonprofit entities to falsify employment and financial records to personally benefit members and associates of the Big U Enterprise.

e.   Members and associates of the Big U Enterprise would "discipline" other members and associates of the Big U Enterprise who acted in ways seen as detrimental to the Big U Enterprise, or other individuals who were seen as disrespecting the Big U Enterprise or its members, including through threats and acts of violence such as assault, kidnapping, and murder.

f.   Members and associates of the Big U Enterprise would avoid detection and apprehension by law enforcement by, among other activities:

i.   Attempting to thwart and evade law enforcement surveillance;

ii.   Destroying video surveillance or other evidence; and

iii. Threatening or pressuring victims or witnesses of crimes committed by members or associates of the Big U Enterprise to avoid interaction with, or to provide untruthful statements or testimony to, law enforcement officers.

E.   THE RACKETEERING CONSPIRACY

11.  Beginning no later than in or around 2010, and continuing to on or about March 19, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants HENLEY, ROBINSON, and MARTIN, and others known and unknown to the Grand Jury, each being a person employed by and associated with the Big U Enterprise, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and

intentionally conspired to violate Title 18, United States Code,
Section 1962(c), that is, to conduct and participate, directly and
indirectly, in the conduct of the affairs of the Big U Enterprise
through a pattern of racketeering activity, as that term is defined
in Title 18, United States Code, Sections 1961(1) and 1961(5), which
pattern of racketeering consisted of:

     a.   multiple acts involving:

       i.  murder, chargeable under Nevada Revised Statutes,
Sections 200.010, 200.030, 193.330, 193.153, 195.020, 199.480, and
199.490;

       ii.  kidnapping, chargeable under Nevada Revised
Statutes, Sections 200.310, 193.330, 193.153, 195.020, 199.480, and
199.490;

       iii. robbery, chargeable under California Penal Code,
Sections 211, 212, 212.5, 213, 21a, 31, 182, and 664;

       iv.  extortion, chargeable under California Penal
Code, Sections 518, 519, 524, 21a, 31, 182, and 664; and

     b.   multiple acts indictable under:

       i.   Title 18, United States Code, Section 1343
(relating to wire fraud);

       ii.   Title 18, United States Code, Section 1344
(relating to financial institution fraud);

       iii. Title 18, United States Code, Section 1951
(relating to interference with commerce, robbery, or extortion); and

       iv.  Title 18, United States Code, Section 2421
(relating to interstate transportation for the purpose of
prostitution).

12.   It was part of the conspiracy that each defendant agreed that a co-conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Big U Enterprise.

F.   OVERT ACTS

13.   In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants HENLEY, ROBINSON, and MARTIN, together with others known and unknown to the Grand Jury, committed and willfully caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

**1.   Defendants HENLEY and ROBINSON Drove from Los Angeles to Las Vegas, Where Defendant HENLEY Kidnapped and Murdered Victim R.W., a Uneek Music Artist Who Defendant HENLEY Believed Had Disrespected the Big U Enterprise**

(a)   Defendant HENLEY Arranged for Victim R.W. to Record at a Music Studio in Las Vegas and Then Confronted Victim R.W. for Lack of Production

Overt Act No. 1:   In January 2021, defendant HENLEY, using his influence and reputation and the influence and reputation of the Big U Enterprise, arranged for victim R.W. to record music at a studio owned by a Grammy-winning producer (the "Producer") in Las Vegas, Nevada (the "studio").

Overt Act No. 2:   In January 2021, at defendant HENLEY's direction, K.F. -- an employee of Uneek Music -- arranged for victim R.W.'s air travel to Las Vegas on January 19, 2021, and expected return to Los Angeles on January 26, 2021.

Overt Act No. 3:   In January 2021, at defendant HENLEY's direction, K.F. also arranged for victim R.W.'s lodging at an Airbnb in Las Vegas (the "Airbnb") also from January 19, 2021, to January

26, 2021, so that victim R.W. could record music at the studio on behalf of Uneek Music.

Overt Act No. 4:    On January 23, 2021, defendants HENLEY and ROBINSON drove from Los Angeles to Las Vegas in a Lexus sedan (the "sedan") to confront victim R.W. about his lack of production in the studio.

Overt Act No. 5:    On January 24, 2021, at approximately 2:00 a.m., defendant HENLEY arrived at the Airbnb in the sedan and asked victim R.W. why victim R.W. had not been at the studio the previous day, wasting studio time and disrespecting Uneek Music and the Big U Enterprise.

        (b)    Defendant HENLEY Kidnapped and Murdered Victim R.W. for Perceived Disrespect to the Big U Enterprise

Overt Act No. 6:    On January 24, 2021, defendants HENLEY and ROBINSON arrived in the sedan at the studio where victim R.W. was scheduled to record a song.

Overt Act No. 7:    On January 24, 2021, at the direction of defendant HENLEY, victim R.W. recorded a song at the studio before midnight.

Overt Act No. 8:    On January 25, 2021, at approximately 12:58 a.m., defendant HENLEY's two phones stopped reporting location data, indicating that they were turned off or placed in airplane mode, while in the vicinity of the studio.

Overt Act No. 9:    On January 25, 2021, defendant HENLEY drove victim R.W. from the studio to the Airbnb in the sedan.

Overt Act No. 10:    On January 25, 2021, at approximately 1:20 a.m., victim R.W. left the Airbnb with his suitcase packed and entered the sedan with defendant HENLEY, one day before victim R.W.'s

scheduled checkout from the Airbnb and one day before victim R.W.'s return flight to Los Angeles.

Overt Act No. 11:   On January 25, 2021, defendant HENLEY drove victim R.W. north of Las Vegas near the Apex Regional Landfill.

Overt Act No. 12:   On January 25, 2021, defendant HENLEY drove south back to Las Vegas.

Overt Act No. 13:   On January 25, 2021, at approximately 2:15 a.m., defendant HENLEY's two phones both began reporting location data again, indicating that they were turned on or taken out of airplane mode, while defendant HENLEY was continuing to drive south back to Las Vegas.

Overt Act No. 14:   On January 25, 2021, at approximately 2:20 a.m., defendant HENLEY called defendant ROBINSON, who was still at the studio.

Overt Act No. 15:   On January 25, 2021, at approximately 2:30 a.m., defendant HENLEY returned to the studio, telling an employee at the studio that he had gone to the gym.

Overt Act No. 16:   On January 25, 2021, victim R.W.'s body was found in the area depicted below with multiple gunshot wounds to the head.



   (c) <u>Big U Enterprise Members and Associates Attempted to Cover Up the Murder</u>

 <u>Overt Act No. 17:</u> On January 25, 2021, defendant HENLEY contacted the Producer to inform him that Nevada homicide detectives would be interviewing the Producer about the death of victim R.W.

 <u>Overt Act No. 18:</u> On January 26, 2021, defendant HENLEY contacted the Producer and demanded that the Producer and his employees leave the studio premises.

 <u>Overt Act No. 19:</u> On January 26, 2021, at defendant HENLEY's direction, Big U Enterprise associate D.S., and others known and unknown to the Grand Jury, removed portions of the security system from the studio, including security video and data from the times

14

1  victim R.W. and defendants HENLEY and ROBINSON were present at the
2  studio prior to victim R.W.'s murder.

3      Overt Act No. 20:   On January 27, 2021, at approximately 10:03
4  p.m., K.F. asked the Airbnb owner if there were cameras on the
5  property.

6      Overt Act No. 21:   On January 27, 2021, K.F. directed the owner
7  of the account that he used to book victim R.W.'s Airbnb not to speak
8  with law enforcement about victim R.W.'s murder.

9      Overt Act No. 22:   On February 3, 2021, K.F. falsely told law
10 enforcement that he did not know the address of the studio and did
11 not have a phone number for, or any way to contact, defendant HENLEY.

12     Overt Act No. 23:   On December 31, 2022, on an intercepted
13 call, defendant HENLEY explained his motivation for committing
14 murders on behalf of the Big U Enterprise, stating: "What you guys
15 see on the Internet, y'all keep hearing other people who don't have
16 nothing to talk about but sell.  Let me explain something to you.  If
17 I would've had a problem with any man, color, creed, king, or kind,
18 the issue would've been resolved, and he wouldn't be here, or I
19 wouldn't be here.  It ain't no kid nothin'.  And it damn near nobody
20 who been in this muthafucka longer than me, can stand against me, and
21 me be who I am.  If I had a problem with any man, and this wouldn't
22 be so funny to me.  I'm still who they say I am."

23          (d)  <u>Big U Enterprise Members and Associates Attempted
              to Evade Law Enforcement and Control and Intimidate
24            Witnesses to the Murder</u>

25     Overt Act No. 24:   On February 14, 2023, to evade law
26 enforcement interaction regarding victim R.W.'s murder, defendant
27 HENLEY's wife, S.H., falsely informed detectives that defendant
28 HENLEY did not live at his residence fulltime.

Overt Act No. 25:   On February 14, 2023, on an intercepted call, after speaking with detectives, S.H. called defendant HENLEY from defendant HENLEY's father's phone to warn defendant HENLEY that detectives were seeking to discuss victim R.W.'s murder with defendant HENLEY, and defendant HENLEY asked how many officers were there.

Overt Act No. 26:   Beginning on February 14, 2023, to evade law enforcement interaction regarding victim R.W.'s murder, defendant HENLEY did not return home to his residence for multiple days.

Overt Act No. 27:   On February 14, 2023, to evade law enforcement interaction regarding victim R.W.'s murder, defendant HENLEY switched cars with defendant ROBINSON.

Overt Act No. 28:   On February 14, 2023, on an intercepted call, defendant HENLEY called defendant MARTIN to schedule a meeting to discuss victim R.W.'s murder and evading law enforcement.

Overt Act No. 29:   On February 14, 2023, on an intercepted call, defendant HENLEY called D.S. to discuss victim R.W.'s murder.

Overt Act No. 30:   On February 16, 2023, on an intercepted call, defendant HENLEY told D.S. that defendant HENLEY was traveling to Las Vegas the following day where the Producer was located.

Overt Act No. 31:   On February 21, 2023, on an intercepted call, defendant HENLEY ordered his son not to talk to anyone about victim R.W.'s murder.

Overt Act No. 32:   On February 21, 2023, on an intercepted call, defendant HENLEY told S.H. to call K.F.'s mother, but to do so on the encrypted FaceTime application, to discuss victim R.W.'s murder.

<u>Overt Act No. 33:</u>  On February 21, 2023, on an intercepted call, defendant HENLEY told S.H. to be careful what she discussed on the phone regarding victim R.W.'s murder.

<u>Overt Act No. 34:</u>  On February 21, 2023, on intercepted calls, defendant HENLEY arranged meetings with defendants MARTIN and ROBINSON.

<u>Overt Act No. 35:</u>  On July 5, 2023, as captured on a hidden recording device surreptitiously placed inside Under the Hood Muscle Cars, and after law enforcement attempted to contact defendants HENLEY and MARTIN, defendant HENLEY speculated whether they were under law enforcement surveillance for victim R.W.'s murder.

//

//

**2.    For Years, Members and Associates of the Big U Enterprise Extorted Victims Through Actual and Threatened Force, Violence, Fear, and Intimidation**

 (a) <u>Defendant HENLEY Sent Defendant ROBINSON and Others to Rob Victim-1 and a Marijuana Dispensary at Gunpoint After Victim-1 Stopped Making Extortion Payments</u>

<u>Overt Act No. 36:</u>  For years, defendant HENLEY extorted Victim-1, a music and club promoter who transitioned into a partnership with an unlicensed marijuana dispensary located in Los Angeles (the "dispensary"), for up to $25,000 per month in extortion fees, until Victim-1 started to ignore defendant HENLEY's calls.

<u>Overt Act No. 37:</u>  On July 5, 2021, when Victim-1 had been ignoring defendant HENLEY's calls demanding extortion payments, defendant ROBINSON, Big U Enterprise member and self-proclaimed Rollin' 60s member Termaine Ashley Williams, aka "Luce Cannon" ("Williams"), and approximately nine other individuals, all acting at

defendant HENLEY's direction, traveled to the dispensary and committed a robbery.

Overt Act No. 38:    On July 5, 2021, defendant ROBINSON, Williams, and others known and unknown to the Grand Jury stole products, cash, and multiple personal items from those in the dispensary, including Victim-1.

Overt Act No. 39:    On July 5, 2021, shortly after the robbery of Victim-1's dispensary, defendant HENLEY invited Victim-1 to defendant HENLEY's home, where defendant HENLEY, Williams, and other robbers were present, and many of the items robbed from the dispensary were on display.

Overt Act No. 40:    On July 5, 2021, at defendant HENLEY's home with the robbers and the items robbed from Victim-1's dispensary present, defendant HENLEY told Victim-1, "That's how you rob yourself."

Overt Act No. 41:    On July 5, 2021, at defendant HENLEY's home with the robbers and the items robbed from Victim-1's dispensary present, defendant HENLEY returned a portion of the robbery proceeds to Victim-1 and told Victim-1 that he would need to pay $10,000 to prevent future robberies.

Overt Act No. 42:    On July 5, 2021, at defendant HENLEY's home with the robbers and the items robbed from Victim-1's dispensary present, defendant HENLEY directed Victim-1 to identify other marijuana businesses that they could similarly rob and offered to provide Victim-1 with a portion of the robbery proceeds from targets Victim-1 identified.

Overt Act No. 43:    On November 11, 2022, on an intercepted call, defendant HENLEY and Big U Enterprise member and self-

proclaimed Rollin' 60s member Zihirr Mitchell, aka "Bricc Baby" ("Mitchell"), coordinated how Mitchell would give defendant HENLEY the proceeds from a robbery that Mitchell committed.

Overt Act No. 44:  On November 11, 2022, in intercepted calls and text messages, while defendant HENLEY talked with Big U Enterprise associate Fredrick Blanton, Jr. ("Blanton") and defendant ROBINSON to help defendant HENLEY collect from Mitchell's associate, Blanton said, "They robbed a nigga for some shit . . . .  They made a nigga call his plug and then they booked him," to which defendant HENLEY responded, "I'ma grab half of that whatever he got them.  I'm give it to Vey . . . , and Vey can bring the rest of you."

Overt Act No. 45:  On November 11, 2022, in an intercepted call, defendant HENLEY can be heard counting money and stating that it "ain't nothing but two to three racks," to which Blanton responded, "Bricc Baby said it was 'pose to be between five to seven, man.  Gotta make that call out to Bricc man."

Overt Act No. 46:  On March 3, 2023, on an intercepted call, defendant HENLEY described the modus operandi of the Big U Enterprise's robberies, which included robbing individuals but not taking everything from them so that they could continue to work, be robbed, identify other robbery targets, and buy the stolen items back from the Big U Enterprise.

    (b)  Defendants HENLEY and ROBINSON Continued to Extort Victim-1 and Others

Overt Act No. 47:  On July 9, 2021, defendant ROBINSON tasked Victim-1 with identifying additional robbery victims for defendants HENLEY and ROBINSON.

Overt Act No. 48:    On July 9, 2021, defendant ROBINSON told Victim-1 that although Victim-1 had paid a portion of his extortion debt to defendant HENLEY, Victim-1 had not paid all of it.

Overt Act No. 49:    On August 6, 2021, to intimidate Victim-1, defendant ROBINSON told Victim-1, "Tryna lick somebody, that ain't even hard.  [UI]  All this shit, it's just, this ain't workin', man. I'm like, 'Man, I'm in the wrong business, homie.'"

Overt Act No. 50:    On September 2, 2021, defendant HENLEY told Victim-1 that any proceeds Victim-1 received from a separate business owner must be paid to defendant HENLEY.

Overt Act No. 51:    On September 3, 2021, defendant ROBINSON told Victim-1 that defendant ROBINSON needed to tell defendant HENLEY something about Victim-1's outstanding extortion debt, and to appease defendant HENLEY, Victim-1 said that he could pay either $500 or $1,000.

Overt Act No. 52:    On September 15, 2021, defendant ROBINSON demanded payment from Victim-1 for defendant HENLEY but stated that he would allow Victim-1 to pay the following day.

Overt Act No. 53:    On September 20, 2021, defendant HENLEY and Victim-1 discussed how the portions of an extortion payment would be divided between defendants HENLEY and ROBINSON, the Rollin' 60s, and Victim-1.

Overt Act No. 54:    On September 20, 2021, defendant ROBINSON discussed with Victim-1 how defendants ROBINSON and HENLEY were "tax[ing]" Victim-1.

Overt Act No. 55:    On September 23, 2021, to intimidate Victim-1, defendant HENLEY expressed his frustration that Victim-1 and

20

another extortion victim, a local businessowner, were not paying
their extortion payments to the Big U Enterprise.

Overt Act No. 56:    On October 19, 2021, to intimidate Victim-1,
defendant HENLEY told Victim-1 that defendant HENLEY was taking over
the extortion of a businessowner and taking the profits from "every
fifth table" sold at the establishment.

Overt Act No. 57:    On October 22, 2021, defendant HENLEY asked
Victim-1 why Victim-1 was calling defendant HENLEY instead of paying
his extortion debt.

Overt Act No. 58:    On October 22, 2021, defendant ROBINSON
provided Victim-1 a phone number for a Big U Enterprise associate to
send electronic extortion payments.

Overt Act No. 59:    On November 10, 2021, defendant HENLEY
directed Victim-1 to start running an illegal marijuana shop to pay
"rent" to the Big U Enterprise.

Overt Act No. 60:    On November 29, 2021, defendant ROBINSON
directed Victim-1 to pay defendant HENLEY $1,000 on a weekly basis.

Overt Act No. 61:    On November 29, 2021, to intimidate Victim-
1, defendant ROBINSON asked Victim-1 where another extortion victim
lived so that defendants ROBINSON and HENLEY could "fuck [him] up."

Overt Act No. 62:    On November 29, 2021, Victim-1 paid
defendant HENLEY a $500 extortion payment.

Overt Act No. 63:    On December 11, 2021, defendant ROBINSON
asked Victim-1 how much extortion money Victim-1 had for defendant
HENLEY and stated that defendant HENLEY was going to "want at least a
thousand."

Overt Act No. 64:    On December 17, 2021, defendant ROBINSON asked Victim-1 how much extortion money Victim-1 would have and discussed cash and electronic payments.

Overt Act No. 65:    On December 18, 2021, defendant ROBINSON again asked Victim-1 how much extortion money Victim-1 would have.

Overt Act No. 66:    On January 20, 2022, defendant ROBINSON extorted $1,000 in cash from Victim-1 for defendant HENLEY and the Big U Enterprise.

Overt Act No. 67:    On February 17, 2022, Victim-1 requested an extension from defendant ROBINSON regarding an extortion payment, and defendant ROBINSON told him he had been holding defendant HENLEY off already.

Overt Act No. 68:    On February 17, 2022, Victim-1 paid defendant ROBINSON a $1,000 extortion fee.

Overt Act No. 69:    On February 19, 2022, defendant HENLEY called Victim-1 and demanded $1,500 "real quick."

Overt Act No. 70:    On April 3, 2022, defendant ROBINSON told Victim-1 that defendant HENLEY was increasing Victim-1's "taxes" to $3,500.

Overt Act No. 71:    On April 9, 2022, defendant ROBINSON told Victim-1 that other individuals were paying the Big U Enterprise $2,500 to $3,000 so that defendant HENLEY could purchase S.H. a $30,000 necklace.

Overt Act No. 72:    On April 10, 2022, defendant ROBINSON told Victim-1 that defendant HENLEY wanted to collect $2,000 from Victim-1 every Monday.

Overt Act No. 73:    On April 16, 2022, defendant HENLEY told Victim-1 that he needed a "donation" for S.H.'s birthday.

22

Overt Act No. 74:   On June 5, 2022, to intimidate Victim-1,
defendants HENLEY and ROBINSON demanded that Victim-1 stop doing
business with "Wack 100" because "Wack 100" was suspected to be an
informant.

Overt Act No. 75:   On June 22, 2022, defendant ROBINSON called
Victim-1 and demanded money because defendant HENLEY had demanded it.

Overt Act No. 76:   On June 22, 2022, to intimidate Victim-1,
defendant ROBINSON told Victim-1 that defendant HENLEY had been
asking defendant ROBINSON if the Big U Enterprise needed to do a
"takeover" of Victim-1, referring to the previous takeover robbery of
Victim-1's dispensary after Victim-1 stopped paying the Big U
Enterprise extortion fees.

Overt Act No. 77:   On June 22, 2022, to intimidate Victim-1,
defendant ROBINSON told Victim-1 that when a Big U Enterprise member
spent time with defendant HENLEY, it was necessary to carry a
firearm.

Overt Act No. 78:   On July 9, 2022, to intimidate Victim-1,
defendant HENLEY told Victim-1 that defendant HENLEY had seen "Wack
100" with his wife and daughter and "there's 15 to 20 niggas with us,
with hoodies tied down.  I got my hoodie on all black, tied down.
She like, boom, she jumped in the car, paid for [UI] and then took
off.  Boom, this nigga screamin', 'My wife, Draws, I see you, Eugene,
I see you, Eugene Henley, I see you!'  He screamin' all that, 'He's
got his blower, [UI] his blower out [UI],' but he's fucked up because
nobody's around.  We like, 'Bitch ass nigga.'  I'm like, 'Yeah bitch
ass nigga.'  He like, '[UI] die here, man.  Don't do this.  My wife,
my kids in that car.  Draws, Draws, Draws, don't do this,' he
screamin'."

Overt Act No. 79:   On July 9, 2022, to intimidate Victim-1, defendant HENLEY threatened Victim-1, "We gotta rob someone.  You with that bullshit."

Overt Act No. 80:   On July 14, 2022, defendant ROBINSON told Victim-1 that defendant HENLEY was angry with Victim-1 and demanded $2,000 from Victim-1.

Overt Act No. 81:   On July 21, 2022, defendant HENLEY demanded money from Victim-1 and stated that he needed the money for taxes and the Employment Development Department.

Overt Act No. 82:   On July 31, 2022, defendant HENLEY told Victim-1 that defendant HENLEY needed $30,000 to pay his Developing Options staff and was considering a robbery and increased extortions to obtain the funds, saying that defendant HENLEY did not care if they had to rob Peter to pay Paul, they needed to "get down."

Overt Act No. 83:   On July 31, 2022, Victim-1 paid defendant HENLEY a $1,500 extortion payment after defendant HENLEY told Victim-1 that "we bumped the weekly down to $1,500."

Overt Act No. 84:   On August 4, 2022, defendant ROBINSON told Victim-1 that Victim-1 needed to pay defendants HENLEY and ROBINSON.

Overt Act No. 85:   On August 9, 2022, Victim-1 paid defendant ROBINSON a $1,500 extortion payment.

Overt Act No. 86:   On September 7, 2022, defendant ROBINSON told Victim-1 that Victim-1 needed to pay but explained how Victim-1 could get more time to pay.

Overt Act No. 87:   On September 15, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

Overt Act No. 88:   On September 15, 2022, when Victim-1 asked why Victim-1 and others were still paying extortion fees to the Big U

24

Enterprise, defendant ROBINSON explained that "when [defendant HENLEY] got out, he said, 'I'm the toughest nigga, and here's my body of work to prove it.  And you know . . . I'm the only nigga still killin' niggas today.  You niggas retired.  I didn't.'  They understand that."

Overt Act No. 89:   On September 21, 2022, Victim-1 paid defendant ROBINSON a $1,000 extortion payment.

Overt Act No. 90:   On September 28, 2022, Victim-1 paid defendant ROBINSON a $2,020 extortion payment.

Overt Act No. 91:   On October 2, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that, if defendant ROBINSON was not serving as a middleman for Victim-1 between Victim-1 and defendant HENLEY, it would be "very, very bad" for Victim-1.

Overt Act No. 92:   On October 2, 2022, defendant ROBINSON stated that two people owed the Big U Enterprise $200,000 but defendant ROBINSON had not yet threatened them with violence.

Overt Act No. 93:   On October 5, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

Overt Act No. 94:   On October 21, 2022, defendant HENLEY chastised Victim-1 because an acquaintance of Victim-1 had used defendant HENLEY's name and the stature of the Big U Enterprise to increase his reputation in the community.

Overt Act No. 95:   On October 21, 2022, defendant HENLEY demanded that Victim-1 pay defendant HENLEY for Victim-1's acquaintance using defendant HENLEY's name and the stature of the Big U Enterprise to increase his reputation in the community.

Overt Act No. 96:   On October 21, 2022, when Victim-1 asked how to get his acquaintance to pay for using defendant HENLEY's name and

the stature of the Big U Enterprise to increase his reputation in the community, defendant HENLEY suggested that Victim-1 tie up the acquaintance to get the money.

Overt Act No. 97:  On October 22, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that defendants HENLEY and ROBINSON would be attending an after-party at a club that Victim-1 was promoting and that a "pat down is out" because defendant HENLEY would be in attendance, implying that defendant HENLEY was armed.

Overt Act No. 98:  On November 3, 2022, on an intercepted call discussing Victim-1, defendant HENLEY told defendant ROBINSON that Victim-1 "wasted our name" and they needed to "fix that muthafucka up and get our money."

Overt Act No. 99:  On November 10, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

Overt Act No. 100:  On November 10, 2022, defendant ROBINSON told Victim-1 not to answer Victim-1's phone if defendant HENLEY called Victim-1 because defendant HENLEY was demanding $5,000 from Victim-1.

Overt Act No. 101:  On December 1, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

Overt Act No. 102:  On December 1, 2022, defendant ROBINSON told Victim-1 that defendant ROBINSON was taking 25 to 50 percent of the payments from Victim-1, depending on how much the extortion payment was.

Overt Act No. 103:  On December 1, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that defendant HENLEY accused defendant ROBINSON of getting "soft" with Victim-1 and that defendant HENLEY was going to "fuck up" Victim-1.

Overt Act No. 104:  On December 7, 2022, defendant HENLEY told Victim-1 that he owed defendant HENLEY a lot of money and to bring defendant HENLEY $2,000 a week.

Overt Act No. 105:  On February 7, 2023, on an intercepted call, defendant HENLEY told defendant ROBINSON that he was going to "break [Victim-1]'s jaw."

Overt Act No. 106:  On February 14, 2023, on an intercepted call, as part of the extortion scheme, defendant ROBINSON told defendant HENLEY that defendant ROBINSON told "Jew Boy" that he owed the Big U Enterprise money, that they would allow a payment plan, but if he did not pay, they were going to "shut this motherfucker down."

Overt Act No. 107:  On February 15, 2023, Victim-1 paid defendant ROBINSON a $500 extortion payment.

Overt Act No. 108:  On March 29, 2023, Victim-1 paid defendant ROBINSON a $1,500 extortion payment.

Overt Act No. 109:  On March 29, 2023, defendant ROBINSON told Victim-1 that defendant ROBINSON was only going to give $1,000 of the $1,500 extortion payment to defendant HENLEY.

Overt Act No. 110:  On April 11, 2023, on an intercepted call, defendant HENLEY and Blanton discussed an individual whom the Big U Enterprise was planning to rob in the near future.

Overt Act No. 111:  On April 17, 2023, on an intercepted call, as part of the extortion scheme, defendant HENLEY directed an individual to deliver a message to another marijuana dispensary owner that defendant HENLEY said, "fuck him . . . [and] that he fucked with the wrong guy."

1

          (c)   Defendants HENLEY, ROBINSON, and MARTIN, and Others,
Extorted Victim-2 Through Actual and Threatened Force,

2                Violence, Fear, and Intimidation

3     Overt Act No. 112:  On December 2, 2021, Victim-2 was hosting

4 defendant HENLEY's birthday party at an adult entertainment club in

5 Los Angeles, for which Victim-2 was a promoter.

6     Overt Act No. 113:  On December 2, 2021, defendant HENLEY

7 demanded a $30,000 extortion payment for Victim-2 hosting defendant

8 HENLEY's birthday party.

9     Overt Act No. 114:  On December 2, 2021, defendant HENLEY

10 threatened to have "5,000 6-Os" destroy Victim-2's business and that

11 "if we got to tear that muthafucker up, we going to tear it up.  So

12 be ready for that; be ready for that.  Bring me my money!"

13     Overt Act No. 115:  On December 2, 2021, defendant HENLEY

14 further threatened Victim-2's business if Victim-2 did not pay,

15 threatening "I'll tear that bitch up!  It won't be a club there no

16 more!"

17     Overt Act No. 116:  On December 2, 2021, defendants ROBINSON and

18 MARTIN, and others known and unknown to the Grand Jury, including

19 members of the Rollin' 60s, confronted Victim-2 at his business and

20 extorted $30,000 from him.

21     Overt Act No. 117:  After defendants HENLEY, ROBINSON, and

22 MARTIN extorted $30,000 from Victim-2, Victim-1 and defendant

23 ROBINSON discussed how defendant MARTIN "transform[ed]" that night

24 and how they "took all that shit."

25    **3.    Defendant HENLEY Paid to Transport Women from Los Angeles
to Las Vegas for Prostitution**

26

27     Overt Act No. 118:  On November 10, 2022, on an intercepted

28 call, defendant HENLEY called Armani Aflleje, aka "Mani" ("Aflleje"),

28

and offered to pay her $1,000 to transport women from Los Angeles to Las Vegas to engage in pandering and prostitution.

Overt Act No. 119:  On November 10, 2022, on an intercepted call, Aflleje asked defendant HENLEY, "How many girls I need to bring?" to which defendant HENLEY responded, "That's on you."

Overt Act No. 120:  On November 10, 2022, on an intercepted call, Aflleje told defendant HENLEY, "I'm 'bout to bag some bitches. Guaranteed.  You already know I don't play no games."

Overt Act No. 121:  On November 10, 2022, defendant HENLEY sent Aflleje $1,000 via Zelle to rent a car to transport the women from Los Angeles to Las Vegas.

Overt Act No. 122:  On November 10, 2022, through text messages, Aflleje sent defendant HENLEY photographs of the women she was transporting to Las Vegas.

Overt Act No. 123:  On November 18, 2022, defendant HENLEY sent Aflleje $500 via Zelle for the trip.

Overt Act No. 124:  On January 5, 2023, on an intercepted call between defendant HENLEY, Aflleje, and another person, defendant HENLEY said, "Remember when I told you I be in Vegas?  . . . That's her . . . .  She goin' make every bitch get naked.  'Right there, bitch, get naked.  Give my brother some head.  Right now.'"

Overt Act No. 125:  On June 29, 2023, on an intercepted call, after learning that law enforcement investigators interviewed Aflleje, defendant HENLEY remarked that he was stressed out because investigators approached a woman with whom he was having sex and talked to her about how defendant HENLEY was trying to buy girls and be a pimp.

1    Overt Act No. 126:  On June 30, 2023, on an intercepted call,

2    defendant HENLEY said, "Shit, so you gonna get me and say my crime is

3    sending girls money for sex.  Is that my crime?"

4        **4.    Defendant HENLEY Defrauded Donors Making Charitable Contributions to Developing Options and Other Purported Nonprofits Intended to Help the Community**

5

6    Overt Act No. 127:  On August 20, 2019, Donor-1, a National

7    Basketball Association ("NBA") All-Star player, wire-transferred

8    $20,000 to a Bank of America account number ending in 8350 (the

9    "Developing Options 8350 Account") that was intended as a charitable

10   donation to Developing Options, not to benefit defendant HENLEY

11   personally; on August 21, 2019, defendant HENLEY then wire-

12   transferred the entire $20,000 from Donor-1 into defendant HENLEY's

13   personal bank account for his own personal use.

14   Overt Act No. 128:  On February 3, 2020, Donor-2, a music

15   publishing corporation, donated $24,000 via check deposited into the

16   Developing Options 8350 Account that was intended to provide football

17   equipment for a local not-for-profit organization, not to benefit

18   defendant HENLEY personally; on February 4, 2020, defendant HENLEY

19   then wire-transferred $14,000 of the donation from Donor-2 into

20   defendant HENLEY's personal bank account for his own personal use.

21   Overt Act No. 129:  On November 3, 2021, Developing Options

22   deposited a $19,000 donation check from Donor-3, a content-

23   aggregating video blog and co-producer of defendant HENLEY's "Checc'n

24   In" podcast, that was intended to support Crenshaw Rams Football, a

25   youth football team that Developing Options purportedly operated, not

26   to benefit defendant HENLEY personally; on November 4, 2021,

27   defendant HENLEY then wire-transferred $15,000 of Donor-3's donation

28

30

into defendant HENLEY's personal bank account for his own personal
use.

Overt Act No. 130:  On March 21, 2022, Donor-4, a nonprofit
organization, whose goal was to revitalize South Los Angeles, donated
$10,000 to the Developing Options 8350 Account intended to fund a
meal program, not to benefit defendant HENLEY personally; on March
28, 2022, defendant HENLEY then wire-transferred the entire $10,000
from Donor-4 into defendant HENLEY's personal bank account for his
own personal use.

Overt Act No. 131:  On September 21, 2022, Developing Options
deposited a $20,000 check from Donor-5, a former NBA Most Valuable
Player ("MVP"), that was intended to support Crenshaw Rams Football,
not to benefit defendant HENLEY personally; between September 26,
2022, and October 7, 2022, defendant HENLEY then transferred $13,000
from Donor-5's donation to his personal bank account for his own
personal use.

Overt Act No. 132:  On November 8, 2022, Donor-6, a production
company, wire-transferred a $100,000 donation to the Developing
Options 8350 Account that was intended to support Crenshaw Rams
Football, not to benefit defendant HENLEY personally; between
November 10, 2022, and December 1, 2022, defendant HENLEY then wire-
transferred $36,400 of Donor-6's donation into defendant HENLEY's
personal bank account for his own personal use.

Overt Act No. 133:  On December 13, 2022, Developing Options
deposited a $50,000 check from Donor-7, a nonprofit, donor-advised
fund that disburses charitable donations from individuals and
companies directly to nonprofit organizations on behalf of a
multinational music company, that was intended to pay the direct

program costs and expenses of operating Developing Options' social justice programs and initiatives, not to benefit defendant HENLEY personally; between December 19, 2022, and January 3, 2023, defendant HENLEY then transferred $32,500 of Donor-7's donation into defendant HENLEY's personal bank account for his own personal use.

5.  **Defendants HENLEY and MARTIN Aided a Big U Enterprise Associate and Developing Options Employee in Submitting a Fraudulent Loan Application**

Overt Act No. 134:  On January 2, 2023, on an intercepted call, Tiffany Shanrika Hines ("Hines"), a licensed loan officer for a mortgage lending business, called defendant HENLEY to discuss a failed loan application submitted by Blanton, an associate of the Big U Enterprise and an employee of Developing Options.

Overt Act No. 135:  On January 2, 2023, on an intercepted call, Hines instructed defendant HENLEY to "put him on a salary and then increase it just for the time being because we know that he can afford the mortgage.  It's just the documentation."

Overt Act No. 136:  On January 13, 2023, defendants HENLEY and MARTIN, and others known and unknown to the Grand Jury, in order to benefit Big U Enterprise associate Blanton and to assist him in obtaining a loan, falsely increased Blanton's reported income from Developing Options, stating that Blanton had nonemployee compensation for the 2023 calendar year of approximately $6,500.

Overt Act No. 137:  On January 16, 2023, Blanton submitted a residential loan application, falsely claiming that he had monthly income of $8,166.67 from Developing Options, as Hines had instructed defendant HENLEY to do in order to fraudulently obtain the loan.

Overt Act No. 138:  On January 16, 2023, Hines submitted Blanton's application for underwriting, while failing to disclose her

32

plan with defendants HENLEY and MARTIN that Blanton's reported income was artificially being increased on the loan application documents in order to fraudulently obtain the loan, and would be decreased after the loan was obtained.

**6. Defendant HENLEY Defrauded the Small Business Administration of Monies for Pandemic-Related Relief**

(a) Uneek Music Received $100,000 in SBA Funds

Overt Act No. 139:  On June 16, 2020, defendant HENLEY electronically submitted an application under the Economic Injury Disaster Loan Program on behalf of Uneek Music, in which he falsely represented that Uneek Music had gross revenues of $500,000 and a cost of goods sold of $300,000 in calendar year 2019.

Overt Act No. 140:  On June 24, 2020, defendant HENLEY electronically signed a loan agreement between Uneek Music and the Small Business Administration ("SBA"), in which he certified that all representations in his application were true, correct, and complete.

Overt Act No. 141:  On June 26, 2020, defendant HENLEY accepted from the SBA a transfer of approximately $89,900 -- a $90,000 loan less the $100 filing fee -- into Uneek Music's checking account, based on the fraudulent June 16, 2020 loan application and fraudulent June 24, 2020 loan agreement.

Overt Act No. 142:  On July 7, 2020, defendant HENLEY accepted from the SBA a transfer of approximately $10,000 into Uneek Music's checking account based on the fraudulent June 16, 2020 loan application.

(b) Celebrity Socks Received $6,000 in SBA Funds

Overt Act No. 143:  On June 16, 2020, defendant HENLEY electronically submitted an application under the Economic Injury

Disaster Loan Program for Celebrity Socks, doing business as Uneek Socks, in which he falsely certified that the "Applicant is not engaged in any illegal activity (as defined by Federal guidelines)."

Overt Act No. 144:  On June 19, 2020, in reliance on defendant HENLEY's fraudulent misrepresentations, the SBA disbursed a $6,000 advance to defendant HENLEY.

//

//

**7.    Defendants HENLEY and ROBINSON, and Other Big U Enterprise Members and Associates, Continued to Attempt to Solidify the Enterprise's Control Over the Community**

(a)    Members and Associates of the Big U Enterprise Continued to Engage in Violence in Furtherance of the Big U Enterprise and Boasted about the Big U Enterprise's Reputation for Violence and Its Illegal Activities to Instill Fear in, Intimidation of, and Control Over the Community

Overt Act No. 145:  In November 2022, defendant HENLEY arranged for a co-conspirator to collect an illegal debt from a current NBA All-Star Player who purportedly owed $3,000,000 to a Big U Enterprise associate.

Overt Act No. 146:  In November 2022, defendant HENLEY took a portion of the debt that current NBA All-Star Player owed as a fee for collecting the illegal debt.

Overt Act No. 147:  On November 7, 2022, on an intercepted call, after an extortion victim stated that defendant HENLEY had not fully paid the extortion victim for work on defendant HENLEY's vehicle, defendant HENLEY directed defendant MARTIN to call the extortion victim "right now" and stated that he would "go out there n' kill that nigga"; defendant MARTIN then connected defendant HENLEY with the extortion victim and participated in the extortionate call.

34

Overt Act No. 148:  On November 14, 2022, on an intercepted call, defendant HENLEY described to a former National Football League ("NFL") player that defendant HENLEY would "beat the shit" out of the Producer, who owned the studio in Las Vegas, because he "started shit" between defendant HENLEY and "Wack 100."

Overt Act No. 149:  On November 22, 2022, on an intercepted call, defendant HENLEY told an incarcerated individual that anyone coming at him "better come correct" because defendant HENLEY always has "two blowers" (i.e., firearms) on him.

Overt Act No. 150:  On November 22, 2022, on an intercepted call, defendant HENLEY told an incarcerated individual that defendant HENLEY was going to charge someone in federal prison $6,000 to have a phone smuggled to him.

Overt Act No. 151:  On November 23, 2022, on an intercepted call, defendant HENLEY said that he can pay three people $50 each to beat someone up.

Overt Act No. 152:  On November 23, 2022, on an intercepted call, defendant HENLEY described paying people to "mess up" a store that was refusing to provide defendant HENLEY a discount.

Overt Act No. 153:  On December 27, 2022, on an intercepted call, defendant HENLEY told a Big U Enterprise associate that they need to "hang" "OG Crip Cuz."

Overt Act No. 154:  On December 27, 2022, on an intercepted call, defendant HENLEY told another Big U Enterprise associate that "OG Crip Cuz" needed to be "disciplined thoroughly" for a "violation of crippin'."

1    <u>Overt Act No. 155:</u>  On December 30, 2022, on an intercepted
2    call, defendant HENLEY said that when defendant HENLEY catches "Wack
3    100," "I'ma break his jaw."

4    <u>Overt Act No. 156:</u>  On December 31, 2022, on an intercepted
5    call, defendant HENLEY said that defendant HENLEY was "bigger" than
6    deceased rapper Nipsey Hussle, that defendant HENLEY disciplined
7    Nipsey Hussle, and that defendant HENLEY was "bigger" than "any other
8    Rollin' 60."

9    <u>Overt Act No. 157:</u>  On December 31, 2022, on an intercepted
10    call, defendant HENLEY said that if anyone has an issue with
11    defendant HENLEY, they will no longer be alive.

12    <u>Overt Act No. 158:</u>  On January 1, 2023, on an intercepted call,
13    defendant HENLEY said that he was not beefing with Nipsey Hussle
14    because if anyone beefs with defendant HENLEY, "I'ma kill him.
15    Period.  I.  Am.  Going.  To.  Murder.  Him."

16    <u>Overt Act No. 159:</u>  On January 2, 2023, on an intercepted call,
17    defendant HENLEY told Big U Enterprise associate D.S. that to
18    manipulate the press for D.S.'s lawsuit against law enforcement, D.S.
19    should show both positive and negative parts of his life, wear
20    glasses, and say that he was working with Developing Options, even
21    though he was not.

22    <u>Overt Act No. 160:</u>  On January 2, 2023, on an intercepted call,
23    defendant HENLEY told Big U Enterprise associate D.S. that defendant
24    HENLEY needed to "at least" break the Producer's jaw.

25    <u>Overt Act No. 161:</u>  On January 3, 2023, on an intercepted call,
26    defendant HENLEY described to an incarcerated individual "tooling up"
27    with firearms to travel to a Crips neighborhood because "we are the
28    most arrogant, bougie, self-righteous motherfuckers on planet Earth."

Overt Act No. 162:  On January 3, 2023, on an intercepted call, defendant HENLEY told an incarcerated individual that defendant HENLEY was going to purchase six miniature phones to send to the incarcerated individual so that he could sell them in prison for $1,000 each.

Overt Act No. 163:  On January 5, 2023, on an intercepted call, defendant HENLEY said that another individual was "done" for being "a rat."

Overt Act No. 164:  On January 12, 2023, on an intercepted call, defendant HENLEY said he wanted to "beat the shit out" of "Wack 100."

Overt Act No. 165:  On January 17, 2023, on an intercepted call, defendant HENLEY discussed traveling to Jordan Downs, within Grape Street Crip territory, and threatening to "kill motherfuckers every day" until he got his things back.

Overt Act No. 166:  On January 17, 2023, on an intercepted call, defendant HENLEY stated that he was the "hunter of the 60s" and that he had obtained "paperwork" on individuals that should not be associated with the gang anymore.

Overt Act No. 167:  On February 13, 2023, on an intercepted call, defendant HENLEY told a co-conspirator that defendant HENLEY was going to break the jaw of the business manager for a former NBA MVP.

Overt Act No. 168:  On February 14, 2023, on an intercepted call, defendant HENLEY described smacking the "Jew Boy" again.

Overt Act No. 169:  On April 1, 2023, on an intercepted call, defendant HENLEY asked someone to grab defendant HENLEY's "blower," which he left on the ground, in a blue sweatshirt, in front of a tire.

Overt Act No. 170:  On April 23, 2023, on an intercepted call,
defendant HENLEY discussed gang politics with a co-conspirator and
stated, "I'm retired, nigga?  Activist?  I'll pull up on your block
right now, nigga, and show up and show out, nigga.  That's what
happened to the last niggas that thought I was retired."

//

//

(b)  Defendant HENLEY Instructed a Victim to Obstruct
Justice by Providing Untruthful Information to Law
Enforcement about an Assault Committed by a Big U
Enterprise Associate

Overt Act No. 171:  On December 9, 2022, an associate of
defendant HENLEY, and former NFL player, was involved in an
altercation with a victim at a restaurant in Los Angeles.

Overt Act No. 172:  On December 23, 2022, on an intercepted
call, defendant HENLEY instructed the victim's relative that the
victim was to "go to the lineup.  Tell him to pick the wrong person."

Overt Act No. 173:  On January 2, 2023, on a multi-way telephone
call, defendant HENLEY said, "The young nigga going to say he stole
his watch out the bathroom and [the former NFL player] came to get
his watch back and it turned into something else.  He's going to
apologize for stealing [the former NFL player]'s watch.  You know
what I'm saying, he thought it was somebody, he thought it was his
watch.  [The former NFL player] came back to get his watch, and it
turned into a scuffle.  They were only trying to prevent a crime
. . . .  Case dismissed."

Overt Act No. 174:  On January 7, 2023, on an intercepted call,
defendant HENLEY called the victim's relative and told him that the

victim needed to take the blame for the incident to avoid criminal charges for the former NFL player.

Overt Act No. 175:  On January 7, 2023, defendant HENLEY met with the victim's father in person.

Overt Act No. 176:  On January 9, 2023, while on an intercepted call with the victim's relative, defendant HENLEY told him to "get the criminal case off" them.

**8.    Defendant HENLEY Fled from Law Enforcement, Obstructed the Investigation, and Attempted to Poison the Jury Pool Before Turning Himself In**

Overt Act No. 177:  In March 2025, defendant HENLEY learned of a law enforcement operation to arrest defendant HENLEY on March 19, 2025.

Overt Act No. 178:  On March 19, 2025, at approximately 12:30 a.m., defendant HENLEY's two phones stopped reporting location data, indicating that they were turned off or placed in airfplane mode.

Overt Act No. 179:  In the early morning hours of March 19, 2025, defendant HENLEY and S.H. left their home to evade law enforcement apprehension.

Overt Act No. 180:  In the early morning hours of March 19, 2025, S.H. left her phone powered on and reporting location data from her and defendant HENLEY's home.

Overt Act No. 181:  On March 19, 2025, before fleeing their home, defendant HENLEY left a subpoena related to this investigation, which had been recently served on Developing Options, on a table near a hat for the Seattle Mariners, a professional sports team adopted by Rollin' 60s members as a symbol of the gang.

Overt Act No. 182:  On March 19, 2025, in an attempt to poison the jury pool, defendant HENLEY posted to the "Crenshaw Cougars"

Instagram account, claiming racial profiling and blaming his co-
defendants and opponents for the charges filed against him in a
federal criminal complaint.

Overt Act No. 183:  On March 19, 2025, in an attempt to
intimidate and dissuade anyone from cooperating with law enforcement
or otherwise reporting information about defendant HENLEY, defendant
HENLEY posted to the "Crenshaw Cougars" Instagram account, naming his
co-defendants and known opponents, instructing the public not to
associate with them, and claiming that if they did, "they were not
black."

Overt Act No. 184:  On March 19, 2025, defendant HENLEY
surrendered to the United States Marshals Service without his phones
that previously stopped reporting location data.

G.    NOTICE OF SPECIAL SENTENCING ALLEGATION

14.  As part of his agreement to conduct and participate in the
conduct of the affairs of the Big U Enterprise through a pattern of
racketeering, on or about January 25, 2021, defendant HENLEY, with
others known and unknown to the Grand Jury, unlawfully,
intentionally, willfully, and deliberately, and with premeditation
and malice aforethought, killed victim R.W., in violation of Nevada
Revised Statutes, Sections 200.010, 200.030, and 195.020.

1                              COUNT TWO

2                          [18 U.S.C. § 1951(a)]

3              [DEFENDANTS HENLEY, ROBINSON, AND WILLIAMS]

4        15.  The Grand Jury realleges paragraphs 1 through 10 and 12

5   through 14 of this First Superseding Indictment here.

6   A.   OBJECT OF THE CONSPIRACY

7        16.  Beginning on an unknown date, and continuing until at least

8   on or about March 19, 2025, in Los Angeles County, within the Central

9   District of California, and elsewhere, defendants EUGENE HENLEY, JR.,

10  also known as ("aka") "Big U," aka "Unc," aka "Draws," aka

11  "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave

12  Austin," SYLVESTER ROBINSON, aka "Vey," and TERMAINE ASHLEY WILLIAMS,

13  aka "Luce Cannon," conspired with each other and others known and

14  unknown to the Grand Jury to knowingly and intentionally obstruct,

15  delay, and affect commerce and the movement of articles in commerce

16  by robbery, in violation of Title 18, United States Code, Section

17  1951(a).

18  B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

19       ACCOMPLISHED

20       17.  The object of the conspiracy was to be accomplished, in

21  substance, as follows:

22            a.   Defendants HENLEY and ROBINSON, and other co-

23  conspirators, would plan robberies.

24            b.   Defendants ROBINSON and WILLIAMS, and other co-

25  conspirators, would rob victims, carrying and brandishing firearms to

26  control and frighten the victims and to demand property from the

27  victims.

28

                                   41

c.    Defendants ROBINSON and WILLIAMS, and other co-conspirators, would deliver the stolen property to defendant HENLEY.

d.    Defendant HENLEY, and other co-conspirators, would distribute the stolen property amongst the co-conspirators and others, including sometimes giving some of the stolen property back to its rightful owner.

C.    <u>OVERT ACTS</u>

18.  In furtherance of the conspiracy, and to accomplish its object, defendants HENLEY, ROBINSON, and WILLIAMS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the overt acts numbered 36 through 46 as set forth in Count One of this First Superseding Indictment, which are realleged here.

COUNT THREE

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY, ROBINSON, AND WILLIAMS]

19.  The Grand Jury realleges paragraphs 1 through 19 of this First Superseding Indictment here.

20.  On or about July 5, 2021, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and TERMAINE ASHLEY WILLIAMS, aka "Luce Cannon," and others known and unknown to the Grand Jury, each aiding and abetting the others, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by knowingly and willingly committing robbery, in that defendants HENLEY, ROBINSON, and WILLIAMS, and others known and unknown to the Grand Jury, unlawfully took and obtained property belonging to an unlicensed marijuana dispensary located in Los Angeles, California, from and in the presence of its employees, against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and property, and property in their custody and possession.

COUNT FOUR

[18 U.S.C. § 1951(a)]

[DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

21.   The Grand Jury realleges paragraphs 1 through 21 of this First Superseding Indictment here.

A.   OBJECT OF THE CONSPIRACY

22.   Beginning on an unknown date, and continuing until at least on or about March 19, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and MARK MARTIN, aka "Bear Claw," conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally obstruct, delay, and affect commerce and the movement of articles in commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

23.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Defendants HENLEY, ROBINSON, and MARTIN, and other co-conspirators, would demand money or other property from a victim, sometimes disguised as a tax or protection fee, under threat or fear of physical violence or robbery.

b.   Defendants HENLEY, ROBINSON, and MARTIN, and other co-conspirators, would collect the extortion payment or other property from the victim.

1  C.    <u>OVERT ACTS</u>

2        24.   In furtherance of the conspiracy, and to accomplish its

3  object, defendants HENLEY, ROBINSON, and MARTIN, and others known and

4  unknown to the Grand Jury, committed various overt acts within the

5  Central District of California, and elsewhere, including, but not

6  limited to, the overt acts numbered 36 through 117 as set forth in

7  Count One of this First Superseding Indictment, which are realleged

8  here.

COUNTS FIVE THROUGH SEVENTEEN

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY AND ROBINSON]

25.  The Grand Jury realleges paragraphs 1 through 25 of this First Superseding Indictment here.

26.  On or about the following dates, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," and SYLVESTER ROBINSON, aka "Vey," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to obtain property, obstructed, delayed, and affected, and attempted to obstruct, delay, and affect, interstate commerce by committing extortion, in that defendants HENLEY and ROBINSON obtained, and attempted to obtain, property, consisting of money from Victim-1, a partner in an unlicensed marijuana dispensary, promoter, and marketer operating in interstate commerce, by means of threatened force, violence, and fear of injury, immediate and future, to Victim-1 and Victim-1's businesses:

| COUNT | DATE | EXTORTION/ ATTEMPTED EXTORTION | AMOUNT |
|-------|------|-------------------------------|--------|
| FIVE | November 29, 2021 | Attempted Extortion | $500 |
| SIX | January 20, 2022 | Attempted Extortion | $1,000 |
| SEVEN | February 17, 2022 | Attempted Extortion | $1,000 |
| EIGHT | July 31, 2022 | Extortion | $1,500 |

| COUNT | DATE | EXTORTION/ ATTEMPTED EXTORTION | AMOUNT |
|---|---|---|---|
| NINE | August 9, 2022 | Attempted Extortion | $1,500 |
| TEN | September 15, 2022 | Attempted Extortion | $2,000 |
| ELEVEN | September 21, 2022 | Extortion | $1,000 |
| TWELVE | September 28, 2022 | Extortion | $2,020 |
| THIRTEEN | October 5, 2022 | Attempted Extortion | $2,000 |
| FOURTEEN | November 10, 2022 | Attempted Extortion | $2,000 |
| FIFTEEN | December 1, 2022 | Attempted Extortion | $2,000 |
| SIXTEEN | February 15, 2023 | Extortion | $500 |
| SEVENTEEN | March 29, 2023 | Attempted Extortion | $1,500 |

COUNT EIGHTEEN

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

27.  The Grand Jury realleges paragraphs 1 through 27 of this First Superseding Indictment here.

28.  On or about December 2, 2021, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and MARK MARTIN, aka "Bear Claw," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to obtain property, obstructed, delayed, and affected interstate commerce by committing extortion, in that defendants HENLEY, ROBINSON, and MARTIN obtained property, consisting of $30,000 from Victim-2, a promoter of an international adult entertainment club, with a location in Los Angeles, California, by means of threatened force, violence, and fear of injury, immediate and future, to Victim-2 and Victim-2's business.

COUNT NINETEEN

[18 U.S.C. §§ 2421(a), 2]

[DEFENDANTS HENLEY AND AFLLEJE]

29.  The Grand Jury realleges paragraphs 1 through 29 of this First Superseding Indictment here.

30.  In or around November 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," and ARMANI AFLLEJE, aka "Mani," each aiding and abetting the other, knowingly transported and willfully caused to be transported individuals in interstate commerce, from the State of California to the State of Nevada, with the intent that the individuals engage in prostitution and other sexual activity for which a person could be charged with a criminal offense, namely, Pandering, in violation of Nevada Revised Statutes Section 201.300, and Prostitution Outside of Licensed House of Prostitution, in violation of Nevada Revised Statutes Section 201.353.

COUNTS TWENTY THROUGH TWENTY-FOUR

[18 U.S.C. § 1343]

[DEFENDANT HENLEY]

31.  The Grand Jury realleges paragraphs 1 through 31 of this First Superseding Indictment here.

A.  THE ECONOMIC INJURY DISASTER LOAN PROGRAM

32.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of loans, referred to as Economic Injury Disaster Loans ("EIDL"), through a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

33.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

34.  To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

50

35.  EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 35 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

36.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the Paycheck Protection Program ("PPP"), the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

B.   THE SCHEME TO DEFRAUD

37.  Beginning no later than on or about June 16, 2020, and continuing until at least on or about July 7, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

38.  The scheme to defraud operated and was carried out, in substance, as follows:

a.   On or about June 16, 2020, using IP address 172.116.15.1 from Los Angeles, California, defendant HENLEY, as Chief Executive Officer of Uneek Music, submitted and caused to be

51

1    submitted a false and fraudulent application to the SBA for an EIDL

2    loan number ending in 8000 ("EIDL 8000") in the amount of $90,000 on

3    behalf of Uneek Music.

4         b.    Defendant HENLEY knowingly made false statements to

5    the SBA in connection with the application for EIDL 8000 for Uneek

6    Music, including false statements about (i) the gross revenue for

7    Uneek Music for the 12-month period preceding the disaster; (ii) the

8    cost of goods sold for Uneek Music for the 12-month period preceding

9    the disaster; and (iii) the truth and accuracy of the information and

10   documents submitted in, or with, the EIDL 8000 application.

11        c.    In connection with applying for EIDL 8000, defendant

12   HENLEY directed that the SBA wire-transfer the EIDL loan funds to a

13   Bank of America account number ending in 6812 (the "Uneek 6812

14   Account").

15   39.    Through materially false and fraudulent statements, and the

16   concealment of material facts, defendant HENLEY caused the SBA to

17   approve EIDL 8000 and to wire-transfer and deposit the EIDL loan

18   funds into the Uneek 6812 Account.

19   C.   USE OF THE WIRES

20   40.    On or about the dates set forth below, in Los Angeles

21   County, within the Central District of California, and elsewhere, for

22   the purpose of executing the scheme to defraud, defendant HENLEY

23   transmitted and caused the transmission of the following items by

24   means of wire communication in interstate commerce:

25
| COUNT | DATE | WIRING |
|---|---|---|
26 | TWENTY | June 16, 2020 | Electronic transmission of EIDL application number 3304936943 for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located |
27

28

| COUNT | DATE | WIRING |
|-------|------|--------|
| | | in Des Moines, Iowa. |
| TWENTY-ONE | June 24, 2020 | Electronic transmission of Loan Authorization and Agreement for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located in Des Moines, Iowa. |
| TWENTY-TWO | June 24, 2020 | Electronic transmission of Certificate of Completion and DocuSign authentication for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located in Des Moines, Iowa. |
| TWENTY-THREE | June 26, 2020 | Wire transfer of proceeds of EIDL 8000 from the SBA Denver Finance Center located in Denver, Colorado, through a server in Sterling, Virginia, to the Uneek 6812 Account in Los Angeles, California, in the amount of approximately $89,900. |
| TWENTY-FOUR | July 7, 2020 | Wire transfer of a grant from the SBA Denver Finance Center located in Denver, Colorado, through a server in Sterling, Virginia, to the Uneek 6812 Account in Los Angeles, California, in the amount of approximately $10,000. |

COUNTS TWENTY-FIVE THROUGH THIRTY-FOUR

[18 U.S.C. §§ 1343, 2]

[DEFENDANT HENLEY]

41.  The Grand Jury realleges paragraphs 1 through 41 of this First Superseding Indictment here.

A.  THE SCHEME TO DEFRAUD

42.  Beginning as early as in or around August 2019 and continuing through on or about March 19, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim-donors to whom defendant HENLEY had agreed to apply donated funds toward providing charitable services, including, but not limited to, Donor-1, Donor-2, Donor-3, Donor-4, Donor-5, Donor-6, and Donor-7, as to material matters, and to obtain money and property from such victim-donors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

43.  The scheme to defraud operated and was carried out, in substance, as follows:

a.  Defendant HENLEY would solicit donations from donors, including but not limited to Donor-1, Donor-2, Donor-3, Donor-4, Donor-5, Donor-6, and Donor-7, for donations to Developing Options, an organization defendant HENLEY represented to donors as a

charitable organization that purported to divert at-risk youth away from gang activity.

b. Defendant HENLEY would represent to donors that funds donated to Developing Options would be used for these charitable purposes.

c. After the donated funds were deposited in or transferred to Developing Options' bank account, however, defendant HENLEY would transfer all or some of the donated charitable funds to his personal bank account for his own personal use.

44. Through this scheme, defendant HENLEY defrauded donors of at least approximately $166,900.

B. USE OF THE WIRES

45. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENLEY, for the purpose of executing the scheme to defraud, transmitted, and caused the transmission of, the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | WIRING |
|---|---|---|
| TWENTY-FIVE | November 3, 2021 | Check in the amount of $19,000 from Donor-3 deposited at a Bank of America branch located in Los Angeles, California, which caused an electronic wire signal from J.P. Morgan Chase servers located outside California to Bank of America servers located in Richardson, Texas, and to Bank of America servers located in Los Angeles, California. |
| TWENTY-SIX | November 3, 2021 | Bank transfer in the amount of $15,000 from the Developing Options Bank of America account to defendant HENLEY's Bank of America account, which caused the transmission of an electronic wire signal from Bank of America servers located in Richardson, Texas, to Bank of America servers located in Los Angeles, California. |

| COUNT | DATE | WIRING |
|---|---|---|
| TWENTY-SEVEN | March 21, 2022 | Check in the amount of $10,000 from Donor-4 deposited at a Bank of America branch located in Los Angeles, California, which caused an electronic wire signal from Bank of America servers to Bank of America servers located in Richardson, Texas, and to Bank of America servers located in Los Angeles, California. |
| TWENTY-EIGHT | March 28, 2022 | Bank transfer in the amount of $10,000 from the Developing Options Bank of America account to defendant HENLEY's Bank of America account, which caused the transmission of an electronic wire signal from Bank of America servers located in Richardson, Texas, to Bank of America servers located in Los Angeles, California. |
| TWENTY-NINE | September 21, 2022 | Check in the amount of $20,000 from Donor-5 deposited at a J.P. Morgan Chase branch located in Los Angeles, California, which caused an electronic wire signal from J.P. Morgan Chase servers outside California. |
| THIRTY | September 26, 2022 | Bank transfer in the amount of $4,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from J.P. Morgan Chase servers located outside California. |
| THIRTY-ONE | November 8, 2022 | Wire transfer in the amount of $100,000 from Donor-6, routed through Fedwire Funds Service, which caused an electronic wire signal from servers in New Jersey or Texas, to the Developing Options J.P. Morgan Chase account, which caused an electronic wire signal to J.P. Morgan Chase servers located outside California. |
| THIRTY-TWO | November 15, 2022 | Bank transfer in the amount of $10,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from Los Angeles, California, to J.P. Morgan Chase servers located outside California. |
| THIRTY-THREE | December 13, 2022 | Check in the amount of $50,000 from Donor-7 deposited at a J.P. Morgan Chase branch located in Los Angeles, California, which caused an electronic wire signal from PNC Bank, N.A. servers outside California to J.P. |

56

| COUNT | DATE | WIRING |
|-------|------|--------|
|  |  | Morgan Chase servers located outside California. |
| THIRTY-FOUR | December 19, 2022 | Bank transfer in the amount of $5,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from Los Angeles, California, to J.P. Morgan Chase servers located outside California. |

COUNTS THIRTY-FIVE THROUGH THIRTY-NINE

[18 U.S.C. § 666(a)(1)(A)]

[DEFENDANT HENLEY]

46.    The Grand Jury realleges paragraphs 1 through 46 of this First Superseding Indictment here.

47.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," being an agent of Developing Options, knowingly and willfully embezzled, stole, obtained by fraud, intentionally misapplied, and without authority converted to the use of a person not the rightful owner, the following properties valued at $5,000 or more that were owned by, and were under the care, custody, and control of Developing Options, an organization that received federal program benefits in excess of $10,000 in each of the years 2015 through 2023:

| COUNT | DATES | AMOUNT |
|---|---|---|
| THIRTY-FIVE | November 3, 2021 | Transfer of $15,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-SIX | March 28, 2022 | Transfer of $10,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-SEVEN | Between September 26, 2022, and October 7, 2022 | Transfer of $13,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-EIGHT | November 15, 2022 | Transfer of $10,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-NINE | December 19, 2022 | Transfer of $5,000 from Developing Options' bank account into defendant |

| COUNT | DATES | AMOUNT |
|-------|-------|--------|
|       |       | HENLEY's personal bank account. |

1                              COUNT FORTY

2                        [18 U.S.C. §§ 1344(1), 2]

3              [DEFENDANTS HENLEY, MARTIN, BLANTON, AND HINES]

4        48.  The Grand Jury realleges paragraphs 1 through 48 of this

5   First Superseding Indictment here.

6   A.   INTRODUCTORY ALLEGATIONS

7        At times relevant to this Count:

8        49.  Mortgage Lending Business-1 was a financial institution,

9   namely, a mortgage lending business, which financed and refinanced

10  debt secured by interest in real estate, the activities of which

11  affected interstate and foreign commerce, with multiple branch

12  locations throughout the United States, including in the Central

13  District of California.

14       50.  Defendant TIFFANY SHANRIKA HINES was employed as a licensed

15  loan officer for Mortgage Lending Business-1 at a branch in Orange

16  County, within the Central District of California, and entrusted with

17  determining client eligibility for loan applications.

18       51.  Defendant FREDRICK BLANTON, JR. was a client of defendant

19  HINES with Mortgage Lending Business-1 and an employee of Developing

20  Options.

21       52.  Defendant EUGENE HENLEY, JR., also known as ("aka") "Big

22  U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad,"

23  aka "Anybody Killa," aka "Dave Austin," was the Chief Executive

24  Officer of Developing Options, and defendant MARK MARTIN, aka "Bear

25  Claw," was the Chief Financial Officer of Developing Options.  In

26  their respective positions, defendants HENLEY and MARTIN had control

27  over Developing Options' employees' salaries.

28

                                    60

B.    THE SCHEME TO DEFRAUD

53.    Beginning in or around December 2022, and continuing through in or around January 2023, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants HENLEY, MARTIN, BLANTON, and HINES, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain monies in the custody and control of Mortgage Lending Business-1, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

54.    The fraudulent scheme operated, in substance, in the following manner:

a.    Between in or around December 2022 and in or around January 2023, defendant BLANTON sought an $829,694 loan from Mortgage Lending Business-1 for a residential mortgage.

b.    In order for defendant BLANTON to obtain the loan from Mortgage Lending Business-1, defendants HENLEY, MARTIN, BLANTON, and HINES omitted and concealed material facts and provided Mortgage Lending Business-1 with materially false financial information, including, but not limited to, false and fraudulent financial statements.

c.    In support of the application for the loan, in or around January 2023, defendant HINES advised defendants HENLEY, MARTIN, and BLANTON to falsely inflate defendant BLANTON's reported income from Developing Options in order to fraudulently make BLANTON appear eligible for a loan.

d.    In support of the application for the loan, on or about January 13, 2023, defendants HENLEY and MARTIN, and others

known and unknown to the Grand Jury, falsely reported defendant BLANTON's income from Developing Options to Mortgage Lending Business-1, stating that defendant BLANTON had nonemployee compensation for the 2023 calendar year of approximately $6,500.  In truth and in fact, as defendants HENLEY and MARTIN then knew, defendant BLANTON had no nonemployee compensation for the 2023 calendar year but rather had falsely inflated defendant BLANTON's reported income from Developing Options to assist him in fraudulently obtaining the loan.

e.   In support of the application for the loan, on or about January 16, 2023, defendant BLANTON submitted to Mortgage Lending Business-1 a residential loan application stating that defendant BLANTON had monthly income of $8,166.67 from Developing Options.  In truth and in fact, as defendant BLANTON then knew, defendants HENLEY and MARTIN had falsely increased defendant BLANTON's income by approximately $6,500.

f.   In support of the application for the loan, on or about January 16, 2023, defendant HINES submitted defendant BLANTON's application for underwriting, and, in doing so, defendant HINES failed to disclose to Mortgage Lending Business-1 that defendants HENLEY, MARTIN, BLANTON, and HINES had falsely inflated defendant BLANTON's income from Developing Options to Mortgage Lending Business-1 in order to fraudulently obtain a loan.

C.   EXECUTION OF THE SCHEME TO DEFRAUD

55.  On or about January 16, 2023, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants HENLEY, MARTIN, BLANTON, and HINES, together with others known and unknown to the Grand Jury, executed the fraudulent scheme

1  by committing and willfully causing others to commit the submission

2  of the loan application to Mortgage Lending Business-1, falsely

3  representing a monthly income of $8,166.67 for defendant BLANTON.

COUNT FORTY-ONE

[26 U.S.C. § 7201]

[DEFENDANT HENLEY]

56.    The Grand Jury realleges paragraphs 1 through 56 of this First Superseding Indictment here.

57.    Between in or around January 2019 and in or around April 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2019, by causing to be prepared, and signing and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service and falsely and fraudulently failed to report taxable income for the calendar year 2019 that was $145,615 greater than the amount reported on the tax return, and as a result of such additional taxable income, there was $47,512 additional tax due and owing to the United States of America.

COUNTS FORTY-TWO THROUGH FORTY-THREE

[26 U.S.C. § 7203]

[DEFENDANT HENLEY]

58.  The Grand Jury realleges paragraphs 1 through 58 of this First Superseding Indictment here.

59.  During the calendar years set forth below, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," a resident of Los Angeles County, within the Central District of California, had and received gross income in excess of $100,000.  By reason of gross income greater than $18,650 in 2020 and $18,800 in 2021, defendant HENLEY was required by law, following the close of those calendar years and on or before the dates set forth below, to make an income tax return to the Internal Revenue Service, at Fresno, California, to a person assigned to receive returns at the local office of the Internal Revenue Service in the Central District of California, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Knowing and believing all of the foregoing, defendant HENLEY willfully failed, on or about the dates set forth below, in the Central District of California and elsewhere, to make an income tax return for the calendar years set forth below:

| COUNT | CALENDAR YEAR | DATE OF FAILURE TO FILE |
|---|---|---|
| FORTY-TWO | 2020 | April 15, 2021 |
| FORTY-THREE | 2021 | April 15, 2022 |

1                    FORFEITURE ALLEGATION ONE

2                       [18 U.S.C. § 1963]

3        1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice

4    is hereby given that the United States of America will seek

5    forfeiture as party of any sentence, pursuant to Title 18, United

6    States Code, Section 1963, and Title 28 United States Code, Section

7    2461(c), in the event of any defendant's conviction of any of the

8    offenses set forth in Count One of this First Superseding Indictment.

9        2.    Any defendant so convicted shall forfeit to the United

10   States of America the following:

11            (a)   Any interest the convicted defendant has acquired or

12   maintained as a result of any such offense;

13            (b)   Any interest in, security of, claim against, or

14   property or contractual right of any kind affording a source or

15   influence over, any enterprise which the convicted defendant has

16   established, operated, controlled, conducted, or participated in the

17   conduct of, as a result of any such offense;

18            (c)   Any property constituting, or derived from, any

19   proceeds which the person obtained, directly or indirectly, from

20   racketeering activity or unlawful debt collection as a result of any

21   such offense; and

22            (d)   To the extent such property is not available for

23   forfeiture, a sum of money equal to the total value of the property

24   described in subparagraphs (a), (b), and (c).

25   Pursuant to Title 18, United States Code, Section 1963(m), any

26   defendant so convicted shall forfeit substitute property, up to the

27   //

28   //

66

total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Eighteen of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses;

(b)    All right, title, and interest in any firearm or ammunition involved in or used in any such offense and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence;

//

//

(b) has been transferred, sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court; (d) has

been substantially diminished in value; or (e) has been commingled

with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty through Thirty-four and Forty of this First Superseding Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

2                              FORFEITURE ALLEGATION FOUR

3                    [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

4         1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

5    Procedure, notice is hereby given that the United States of America

6    will seek forfeiture as part of any sentence, pursuant to Title 18,

7    United States Code, Section 981(a)(1)(C) and Title 28, United States

8    Code, Section 2461(c), in the event of any defendant's conviction of

9    the offenses set forth in any of Counts Nineteen or Thirty-five

10   through Thirty-nine of this First Superseding Indictment.

11        2.    Any defendant so convicted shall forfeit to the United

12   States of America the following:

13             (a)   All right, title and interest in any and all property,

14   real or personal, constituting, or derived from, any proceeds

15   traceable to any such offense; and

16             (b)   To the extent such property is not available for

17   forfeiture, a sum of money equal to the total value of the property

18   described in subparagraph (a).

19        3.    Pursuant to Title 21, United States Code, Section 853(p), as

20   incorporated by Title 28, United States Code, Section 2461(c), the

21   defendant so convicted shall forfeit substitute property, up to the

22   total value of the property described in the preceding paragraph if,

23   as the result of any act or omission of the defendant, the property

24   described in the preceding paragraph, or any portion thereof: (a)

25   cannot be located upon the exercise of due diligence; (b) has been

26   transferred, sold to or deposited with a third party; (c) has been

27   placed beyond the jurisdiction of the court; (d) has been

28   substantially diminished in value; or (e) has been commingled with

                                         71

other property that cannot be divided without difficulty.

1                        FORFEITURE ALLEGATION FIVE

2                [26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

3       1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 26,

6    United States Code, 7301, and Title 28, United States Code, Section

7    2461(c), in the event of any defendant's conviction of the offenses

8    set forth in any of Counts Forty-one through Forty-three of this

9    First Superseding Indictment.

10      2.    Any defendant so convicted shall forfeit to the United

11   States of America the following:

12           (a) Any property sold or removed by the defendant in fraud

13   of the internal revenue laws, or with design to avoid payment of such

14   tax, or which was removed, deposited, or concealed, with intent to

15   defraud the United States of such tax or any part thereof;

16           (b) All property manufactured into property of a kind

17   subject to tax for the purpose of selling such taxable property in

18   fraud of the internal revenue laws, or with design to evade the

19   payment of such tax;

20           (c) All property whatsoever, in the place or building, or

21   any yard or enclosure, where the property described in subsection (a)

22   or (b) is found, or which is intended to be used in the making of

23   property described in subsection (a), with intent to defraud the

24   United States of tax or any part thereof, on the property described

25   in subsection (a);

26           (d) All property used as a container for, or which shall

27   have contained, property described in subsection (a) or (b);

28           (e) Any property (including aircraft, vehicles, vessels, or

                                   73

draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f)  To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL


/S/
_____
Foreperson


TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Chief, Major Crimes Section

JENA A. MACCABE
Assistant United States Attorney
Deputy Chief, Major Crimes Section